**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 0:14-cv-60649-JAL**

JENNIFER LEE on behalf of
herself and all others similarly situated,

          Plaintiff,

v.

OCWEN LOAN SERVICING, LLC, ASSURANT,
INC., and AMERICAN SECURITY INSURANCE
COMPANY,

          Defendants.

_____/

**PLAINTIFF'S MOTION FOR PRELIMINARY**
**APPROVAL OF CLASS ACTION SETTLEMENT AND**
**FOR CERTIFICATION OF THE SETTLEMENT CLASS**

Plaintiff and her counsel are proud to announce an extraordinary settlement that would provide significant monetary relief to mortgagors nationwide who had insurance coverage "force placed" on their properties by Ocwen Loan Servicing, LLC ("Ocwen"), as well as injunctive relief that would effectively end the lender-placed insurance ("LPI" or "FPI")[1] practices at issue in this case.  This is the eighth FPI class action settlement presented in this district, and six of the seven before it were granted preliminary approval.[2]  This Court should do the same.

The parties to this action coordinated their efforts with other plaintiffs' counsel pursuing claims against Ocwen and the Assurant Defendants, who have joined the parties' efforts in negotiating this settlement.   Under the settlement, Defendants will pay cash refunds of 12.5% of the total net annual premium to class members who paid their premiums, and credit the same amount to class members who were charged for LPI, but never made payments.  This settlement follows substantially similar LPI settlements that this Court has already approved, including the settlements in *Saccoccio v. JPMorgan Chase Bank, N.A.*, No. 13-cv-21107, *Fladell v. Wells Fargo Bank, N.A.*, No. 13-cv-60721, *Diaz v. HSBC Bank (USA), N.A.*, No. 13-cv-21104, *Hamilton v. SunTrust Mortgage, Inc.*, No. 13-cv-60749, and *Hall v. Bank of America, N.A.*, No. 12-cv-22700, but enhances the claims form and claim process for homeowners.

The settlement's benefits were the result of hard-fought, arms'-length negotiations between the parties and their counsel under the direction of an experienced mediator, Rodney A. Max.   Undersigned counsel were well-positioned to evaluate and negotiate this settlement because they have been investigating lenders' LPI practices since November 2010 and their

---

[1] Lender Placed Insurance or "LPI" is also known as "FPI."

[2] Magistrate Judge Goodman has entered a report and recommendation that the settlement in *Braynen v. Nationstar Mortgage, LLC*, No. 14-cv-20726 (S.D. Fla.), the seventh action, be granted preliminary approval (D.E. 71), but the Court has not yet ruled on his R&R.

investigation and the litigation that followed involved a review of more than three million documents and dozens of depositions. Despite that work, Plaintiff and the Settlement Class faced important hurdles in litigating their claims to resolution. As such, and given the immediate and substantial benefits the settlement will provide, there is no question that the settlement is "within the range of reasonableness" and should receive preliminary approval.

## FACTUAL BACKGROUND

### 1.   Defendants' FPI Practices

The standard form mortgage agreements serviced by Ocwen require the borrower to maintain insurance on the property securing his or her mortgage loan, and provide that the lender or servicer may force new coverage on the property at the borrower's expense in the event of a lapse. (D.E. 1 ¶¶ 24, 46.) The mortgage agreement authorizes the lender to obtain coverage to protect itself against risk of loss, and either advises the borrower that the cost of the coverage might significantly exceed that of the borrower's voluntary coverage or provides that the lender may pay costs necessary to protect its rights in the property. (*Id.*)

### 2.   The Litigation

Plaintiff Lee filed her original complaint in this action on March 14, 2014. (D.E. 1.) The Class Action Complaint brought claims against Ocwen and the Assurant Defendants for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, breach of fiduciary duty, tortious interference with a business relationship, and violations of FDUTPA, and the federal RICO statute. (*Id.* ¶¶ 65-135). All claims arose from Ocwen's LPI program, including arrangements regarding the forced placement of insurance coverage on mortgagors' properties and the inflated premiums and excessive coverage that they impose on homeowners whose "voluntary" property insurance has lapsed. (*Id.*)

Once Plaintiff filed her complaint, she served written discovery on Defendants, who responded in the months that followed.  Defendants moved to dismiss all claims, and their motions were fully briefed as of July 21, 2014.   (D.E. 86, 87, 88.)  The parties filed a joint motion to stay the proceedings pending the parties' scheduled mediation on August 27, 2014, (D.E. 92), and the Court granted their motion on September 2, 2014. (D.E. 98)

On November 6, 2014, the Parties participated in a formal mediation of this action before Rodney A. Max.  In advance of and during the mediation, Defendants provided Plaintiff's counsel with additional information concerning their LPI program.  After the formal mediation session, the parties engaged in multiple additional telephone conferences, with and without the mediator over a period of weeks.   After hard-fought negotiations, with the continued involvement of Mr. Max, the Parties reached a settlement in principle, subject to negotiation and execution of the Settlement Agreement and preliminary and final approval by the Court.

The parties announced their nationwide settlement of all claims to the Court on November 13, 2014, and the Court then stayed litigation of Plaintiff's claims pending settlement approval.  (D.E. 103, 104.) The parties documented their agreement in a memorandum of understanding in the weeks that followed, which they then executed, and subsequently finalized and executed a settlement agreement.   A copy of the Settlement Agreement is attached as **Exhibit A**.[3]  Plaintiffs amended their original complaint for settlement purposes on December 1, 2014, adding additional named plaintiffs and Assurant subsidiaries as defendants.  (D.E. 106.)

---

[3] The following documents are attached to the Settlement Agreement as exhibits:  Class Notice (Exhibit A); Claim Form Instructions (Exhibit B); Claim Form (Exhibit C); proposed Preliminary Approval Order (Exhibit D); proposed Final Approval Order (Exhibit E); and proposed Final Judgment (Exhibit E-1).

3.      **The Settlement Terms and Agreement**

    A.  *The Proposed Settlement Class*

The Settlement Agreement provides relief to "[a]ll borrowers in the United States who, within the  Settlement Class Period … were charged by Ocwen under a hazard, flood, flood gap or wind-only LPI Policy for residential property," between January 1, 2008 through the preliminary approval date.   (Ex. A ¶¶ 3.1, 3.2).  This class will include borrowers whose homes are in foreclosure and short sale, as well as those who were granted a deed in lieu of foreclosure or have modified the terms of their loans.[4]

    B.  *Monetary and Injunctive Relief*

The Settlement Agreement affords members of the Settlement Class significant monetary and injunctive relief.  (*Id.* ¶ 4.)  The monetary relief will compensate class members for a significant part of the inflated portion of the amounts that they either paid or were charged for force-placed coverage.   All Settlement Class members who paid any portion of the amounts owed for LPI and submit a valid claim form will recover 12.5% of the net premium *charged* to them during the class period, less any refund credited them.[5]  (*Id.* ¶ 4.6.3.)  The 12.5% payment is taken from the entire premium, rather than the "excess" or inflated portion of the premium, since a considerable portion of the premiums charged, in fact, were applied to pay for coverage. Qualified members who paid any portion of their premiums will receive a check from Ocwen for

---

[4] By contrast, the court in *Williams v. Wells Fargo Bank, N.A.*, No. 11-cv-21233 (S.D. Fla.), specifically excluded certain categories that are included in this settlement from the Florida class it certified in February 2012. *Williams*, No. 11-cv-21233 (S.D. Fla. Feb. 21, 2012) (D.E. 211).

[5] A claims-made process is appropriate here, as Ocwen and the Assurant Defendants have represented, and discovery has confirmed, that they cannot, on a system-wide basis and without an individualized review, determine the amount of force-placed premiums paid or currently owed by a borrower, or the number of loans that are in foreclosure, or have been modified or refinanced.  The claims that are filed will provide that information for each claimant.

the full settlement amount.  (*Id.*).  Settlement Class members who were charged but did not pay for LPI will receive a check or a credit to their Ocwen account in the amount of 12.5% of the LPI policy's net premium, the distribution method being at Ocwen's discretion.  (*Id.* ¶ 4.6.2.)

The injunctive relief provided by the Settlement Agreement will put an end to the LPI practices that are the subject of this lawsuit.  The Settlement Agreement enjoins Ocwen and the Assurant Defendants from continuing to charge what Plaintiffs allege are inflated premiums for LPI.  For a period of five years following the Final Settlement Date, Ocwen will accept no financial interest in the placement of LPI other than the premium itself and the protection afforded it by the insurance coverage.  (*Id.* ¶ 4.2.1.)  The Settlement Agreement prohibits Ocwen and its affiliated companies from accepting all or a portion of any commission paid on LPI; entering into quota-share reinsurance arrangements with Assurant or any other insurer; accepting payments from any forced-placed insurer or vendor for administrative or other services related to forced-placed insurance; and placing LPI through an Ocwen-affiliated insurer or vendor.  (*Id.* ¶¶ 4.2.1, 4.2.2.)  The Assurant Defendants will similarly be prohibited for five years from providing LPI commissions to Ocwen-affiliated agents or brokers, quota-share reinsurance arrangements, payments for administrative or other services associated with FPI policies, and accepting from Ocwen payments for below-cost or free outsourced services.  (*Id.* ¶ 4.3.)

The Settlement also requires Ocwen to establish LPI coverage at the last-known coverage amount or the unpaid principal balance on a borrower's loan, so that lender-placed coverage moving forward bears some relation to the value of the interest it protects.  (*Id.* ¶ 4.2.1.)  Ocwen will also advance funds in the event of a lapse to continue coverage under the borrower's voluntary policy, (*id.*), thus further ensuring that the cost of coverage bears some relation to the collateral's value and also reducing the number of lender-placed policies issued by Ocwen and

Assurant.  Finally, the Settlement requires Ocwen to refund any amounts due to the borrower once voluntary insurance is put back in place within fifteen days of receipt of evidence of voluntary coverage.  (*Id*.)

### C.  *Release of Claims against Defendants*

In exchange for the relief provided by the Settlement, members of the Settlement Class will release Ocwen and the Assurant Defendants, as well as their all other entities included in the definition of "Released Persons" set forth in the Settlement Agreement (Ex. A ¶ 2.43), from all claims, actions, causes of action, suits, debts, sums of money, payments, obligations, reckonings, promises, damages, penalties, attorney's fees and costs, liens, judgments, and demands "that were or could have been sought or alleged in the Litigation that relate, concern, arise from, or pertain in any way to the Released Persons' conduct, policies, or practices concerning Ocwen's placement, or the Assurant Defendants' issuance, of LPI Policies during the Settlement Class Period, including but not limited to conduct, policies or practices concerning LPI Policies or to charges for Ocwen's Placement of LPI Policies during the Settlement Class Period."  (*Id.* ¶ 10.1.)

### D.  *Class Notice*

Settlement Class members will receive notice of the settlement, instructions, and a claim form by first-class mail at their last-known mailing address in the forms attached to the Settlement Agreement as Exhibits A, B, and C, respectively, assuming they are approved by the Court.  (*Id.* ¶ 6.1).  Class members will receive both English- and Spanish-language versions of these documents.  (*Id.*)  The notice will be mailed no fewer than 90 days before the date set for the final approval hearing.  (*Id.*).  The Claims Administrator shall perform a search of the National Change of Address database for each mailing address attached to a notice that is returned as undeliverable.  (*Id.*).  The Settlement Administrator will also establish a website on

6

which Settlement Class members may download and print or e-sign and upload a claim form and review the Settlement Agreement and its exhibits. (*Id.* ¶ 6.2.).  The parties will also cause notice of the settlement to be published in *USA Today* and advertised on the internet.  (*Id.* ¶¶ 6.3, 6.4.) The notice will provide a toll-free number for class members to call for settlement information. (*Id.* ¶ 6.3 & Exs.).  Members may opt out of the settlement or object by following the prescribed process.  (*Id.* ¶¶ 11, 12.)

### E.  *Claims Process*

To obtain relief from Defendants, Settlement Class members will be required to submit the claim form on or before a deadline that will be set by mutual agreement of the Parties.  (*Id.* ¶¶ 2.8, 7.1).  The claims will be reviewed and approved by the Settlement Administrator, who will then make a determination of the amount owed each class member using Defendants' electronic records, and then have 180 days after the Final Settlement Date to distribute the monetary relief provided for by the Settlement.  (*Id.* ¶¶ 7.2, 7.3, 7.3.3.)  The Settlement Administrator will advise Class Counsel on a weekly basis of any claims deemed invalid before those claims are denied so that Class Counsel may follow up with the borrower to cure any deficiency in his or her submission.  (*Id.* ¶ 7.2.1.) The parties agree to attempt to resolve any disputes related to the denial of class member claims in good faith.

### F.  *Class Counsel Fees and Expenses and Named Plaintiff Case Contribution Award*

The Parties stipulate in the Settlement Agreement that the law firms of Kozyak Tropin & Throckmorton, LLC, Podhurst Orseck, P.A., and Harke Clasby & Bushman, LLP will serve as Class Counsel.  (*Id.* ¶ 2.15).  Class Counsel's application for attorneys' fees and expenses for all of the various law firms involved shall not exceed $9.85 million.  (*Id.* ¶ 15.1.)  Defendants will also pay Plaintiff Lee a service award not to exceed $5,000.00.  (*Id.* ¶ 15.4.)  The Court will

consider whether to approve these awards separate and apart from its analysis of the fairness, reasonableness, and adequacy of the settlement at the Final Approval Hearing.  (*Id.* ¶ 15.5.)

### G.     Final Approval and Objections

Class members may object to the settlement no later than 30 days prior to the Final Approval Hearing, or as the Court may otherwise direct.  (*Id.* ¶ 2.34.)  The Motion for Attorneys' Fees shall be filed 10 days prior to the deadline for filing objections and the Parties shall respond to any objections within 10 days prior to the Final Approval Hearing.

## <u>LEGAL ARGUMENT</u>

## I.     THE COURT SHOULD ENTER AN ORDER GRANTING PRELIMINARY APPROVAL OF THE SETTLEMENT.

Settlement "has special importance in class actions with their notable uncertainty, difficulties of proof, and length.  Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources, and achieve the speedy resolution of justice[.]" *Turner v. Gen. Elec. Co.*, No. 2:05-CV-186-FTM-99DNF, 2006 WL 2620275, at *2 (M.D. Fla. Sept. 13, 2006).  For these reasons, "[p]ublic policy strongly favors the pretrial settlement of class action lawsuits."  *In re U.S. Oil & Gas Litig.,* 967 F.2d 489, 493 (11th Cir.1992).  "Approval of a class action settlement is a two-step process." *Fresco v. Auto Data Direct, Inc.*, No. 03-cv-61063, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007).  Preliminary approval is the first step, requiring the Court to "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." *Id.*  In the second step, after notice to the class and time and opportunity for absent class members to object or otherwise be heard, the court considers whether to grant final approval of the settlement as fair and reasonable.  *Smith v. Wm. Wrigley Jr. Co.*, 2010 WL 240119, at *2 (S.D. Fla. June 15, 2010).

The standard for preliminary approval of a class action settlement is not high—a proposed settlement should be preliminarily approved if it falls "within the range of possible approval" or, otherwise stated, if there is "probable cause" to notify the class of the proposed settlement and "to hold a full-scale hearing on its fairness[.]"  *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983) (quoting MANUAL FOR COMPLEX LITIG. § 1.46 at 62, 64-56 (5th ed. 1982)).  Applying this standard, this Court has granted preliminary approval of class action settlements with similar facts in *Williams*, *Saccoccio*, *Fladell*, *Diaz*, *Hall*, and *Hamilton*, which have now obtained final approval.  This Court, too, should enter an order granting preliminary approval.

### A. The Settlement Is the Product of Good Faith, Informed, and Arms'-Length Negotiations among Experienced Counsel.

At the preliminary approval stage, district courts consider whether the proposed settlement appears to be "'the result of informed, good-faith, arms'-length negotiation between the parties and their capable and experienced counsel' and not 'the result of collusion[.]'"  *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1341 (S.D. Fla. 2011).  The settlement terms in this case are the product of significant give and take by the settling parties, and were negotiated at arms' length.  The parties participated in an intensive mediation with Rodney A. Max, a well-respected mediator with significant experience resolving complex suits.  Mr. Max and the parties participated in an in-person session on November 6, 2014, as well as weeks of continuing negotiation by telephone and email.  The very fact of Mr. Max's involvement weighs in favor of preliminary approval.  *See, e.g., Lobatz v. U.S. In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.*, 447 F. Supp. 2d 612, 619-20 (E.D. La. 2006) (use of court-appointed special master to oversee mediation evidenced procedural fairness of negotiating process); *In re WorldCom, Inc. ERISA Litig.*, 2004 WL 2338151, at *6 (S.D.N.Y.

2004) (that "[a] respected and dedicated judicial officer presided over the lengthy discussions from which this settlement emerged" belied any suggestion of collusion).

The parties' extensive negotiations were also informed by considerable discovery.  Class counsel has been litigating FPI claims involving the Assurant Defendants in this action and others for almost two years.  *See, e.g., Kunzelmann v. Wells Fargo Bank, N.A.*, No. 11-cv-81373-DMM (S.D. Fla.); *Fladell v. Wells Fargo Bank, N.A.*, No. 13-cv-60721 (S.D. Fla.); *Popkin v. Citibank, N.A.*, No. 13-cv-60722 (S.D. Fla.); *Saccoccio*, No. 13-cv-21107.  More than thirty depositions have been taken or used in those cases, and millions of documents produced and reviewed.  Ocwen has also produced discovery in this case, as well as additional information to confirm the reasonableness of the Settlement's terms.

**B. The Settlement Falls Squarely within the Range of Reasonableness.**

As a result of this mediation process, the Settlement provides considerable monetary and injunctive relief to the Settlement Class, and falls well within the range of possible approval.

**1.  Monetary Relief**

The Settlement Agreement provides significant monetary benefits.  All Settlement Class members who paid LPI charges are eligible to receive a check for 12.5% of the net premium charged as long as the they paid a portion of the premium, and all class members who were charged for LPI but did not pay any premium will receive 12.5% of the net premium charged by check or a credit to their escrow account as described above. (Ex. A ¶ 4.6).  This percentage will be of the entire premium charged, *not* a percentage of the premium charged in excess of the actual or competitive cost of coverage.  (*Id.*)

The 12.5% of the premium returned to Settlement Class members mirrors a 12.5% reduction recently approved as reasonable by more than forty-five state regulators as a new

lender-placed product.  These regulators have approved as reasonable an LPI hazard product developed by Assurant that would reduce the rates used to calculate premiums charged to lenders (and then passed in to borrowers) by up to 12.5%— at most—if the lender agrees to forego the commissions and reinsurance profits that are the subject of this lawsuit.  This settlement will retroactively provide Settlement Class Members with the equivalent of that maximum discount.

Federal courts hold that settlements providing the class with a percentage of the recovery sought in litigation are reasonable in light of the attendant risks of litigation.  *See, e.g., Johnson v. Brennan*, No. 10-cv-4712, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *Behrens*, 118 F.R.D. at 542-43 (approving recovery of $.20 per share where desired recovery was $3.50 a share because "the fact that a proposed settlement amounts to only a fraction of the possible recovery does not mean the settlement is inadequate or unfair"); *Fisher Bros., Inc. v. Mueller Brass Co.*, 630 F. Supp. 493, 499 (E.D. Pa. 1985) (approving settlement providing recovery of 0.2% of sales). "Moreover, when settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing speculative payment of a hypothetically larger amount years down the road, settlement is reasonable[.]" *Johnson*, 2011 WL 4357376, at *12.

Plaintiffs and the Settlement Class faced significant hurdles in litigating their claims to resolution, including overcoming Defendants' filed-rate doctrine and other defenses.  Each class member stands to recover hundreds, if not thousands, of dollars as a result of the settlement.  The settlement's monetary recovery falls well within the range of reasonableness.

### 2.  Injunctive Relief

Once approved, the settlement terms will also enjoin Ocwen and the Assurant Defendants for a period of five years from accepting a financial interest in the placement of LPI beyond the premium itself and the protection afforded by the policy on the properties that serve as the collateral for the loans that they extend to borrowers.  (Ex. A ¶¶ 4.2, 4.3).  This means that Ocwen will no longer collect, and the Assurant Defendants will no longer pay, *inter alia*, LPI commissions to Ocwen-affiliated agents or brokers, revenue arising from quota-share reinsurance arrangements, or payments for administrative or other services associated with placement of LPI coverage.  (*Id.*)  The Settlement Agreement effectively prohibits Ocwen and the Assurant Defendants from continuing to implement the practices complained of in the Complaint.  There can be no question that this result is reasonable.

### C.  The Settlement Saves Plaintiffs and the Settlement Class from Considerable Litigation Hurdles.

Any evaluation of the benefits of settlement must be tempered by the recognition that any compromise involves concessions by all settling parties.  Indeed, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Civil Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) (citations omitted).  Had litigation continued, Plaintiffs and Settlement Class members would have faced the risk of not prevailing on their claims.  Defendants have raised numerous defenses to Plaintiffs' claims, including application of the filed-rate doctrine, that judges in this district and elsewhere have recognized as potentially dispositive.  *See, e.g., Montoya v. PNC Bank, N.A.*, No. 14-cv-20474, 2014 U.S. Dist. LEXIS 119464 (S.D. Fla. Aug. 27, 2014) (dismissing some claims and noting that given recent developments, "Plaintiffs' force-placed insurance claims confront a blustery legal atmosphere"); *Fladell*, (May 26, 2013 Hrg. Tr. at 12:23-25, 21:17-21, 92:2-3,

74:4-9, 92:21-23); *Kunzelmann v. Wells Fargo Bank, N.A.*, No. 11-cv-81373, 2013 WL 139913 (S.D. Fla. Jan. 10, 2013) (declining to certify nationwide class of hazard borrowers and noting obstacles created by filed-rate doctrine and application of multistate law, among other things).

**D. Class Counsel Believes the Settlement Is Reasonable.**

Significant weight should be attributed to the belief of experienced counsel that the negotiated settlement is in the best interest of the class. *See In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659, 666 (D. Minn. 1974) (the recommendation of experienced counsel is entitled to great weight); *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995). "The views of the parties to the settlement must … be considered." Counsel here have litigated numerous FPI class actions over the course of approximately three years, and fully support the settlement. They certified the first FPI class in Florida in *Williams v. Wells Fargo Bank, N.A.*, No. 11-cv-21233 (S.D. Fla.), and then settled that case; litigated the motion for class certification in *Kunzelmann*; briefed and argued two motions to centralize FPI litigation in a nationwide MDL; settled claims against Chase, HSBC, Wells Fargo, Bank of America, SunTrust, Nationstar, and their force-placed insurers (always Assurant or QBE) on behalf of nationwide classes in *Saccoccio*, *Diaz*, *Fladell*, *Hall*, *Hamilton*, and *Braynen*, and secured final approval of five of those settlements and the sixth awaiting the Court's decision on Judge Goodman's Report and Recommendation; and are currently litigating six additional cases in the Southern District of Florida against other major mortgage lenders. *See Almanzar v. Select Portfolio Servicing, Inc.*, No. 14-cv-22586 (S.D. Fla.); *Soler v. Indymac Servs.*, No. 14-cv-22541 (S.D. Fla.); *Wilson v. Everbank*, *N.A.*, No. 14-cv-22264 (S.D. Fla.); *Jackson v. U.S. Bank, N.A.*, No. 14-cv-21252 (S.D. Fla.); *Circeo-Loudon v. Green Tree Servicing, LLC*, No. 14-cv-21384 (S.D. Fla.); *Montoya v. PNC Bank, N.A.*, No. 14-cv-20474-

JEM (S.D. Fla.).  Based on this experience, and decades of experience with class action lawsuits, it is Plaintiffs' counsel's informed opinion that, given the uncertainty and expense of pursuing Ocwen and the Assurant Defendants on all claims throughout trial, the settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class.

## II.    THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS.

"It is well established that a class may be certified solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue." *In re Checking Account Overdraft Litig.*, 275 F.R.D. at 659 (brackets in original).  "In deciding whether to provisionally certify a settlement class, a court must consider the same factors that it would consider in connection with a proposed litigation class," save manageability, "since the settlement, if approved, would obviate the need for a trial." *Id.*

### A.  The Settlement Class Meets the Four Requirements of Rule 23(a).

Rule 23(a) sets forth four prerequisites for class certification:  numerosity, commonality, typicality, and adequacy of representation.  *Cheney v. Cyberguard Corp.,* 213 F.R.D. 484,489 (S.D. Fla. 2003); *see* Fed. R. Civ. P. 23(a).  The policies underlying the class action rule dictate that Rule 23(a) should be liberally construed.  *See Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 323 (S.D. Fla. 1996).  Plaintiff satisfies all four requirements as set forth below.

#### 1.  The Settlement Class Is Sufficiently Numerous.

Rule 23(a)(1) requires Plaintiffs to show that the proposed class is so numerous that joinder of all members would be impracticable.  *See* Fed. R. Civ. P. 23(a)(1).  "While there is no fixed rule, generally a class size [of] less than twenty-one is inadequate, while a class size of more than forty is adequate." *Williams*, 2012 WL 566067, at *4 (citing *Cheney*, 213 F.R.D. at 489-90); *see, e.g., Anderson v. Bank of S., N.A.*, 118 F.R.D. 136, 145 (M.D. Fla. 1987) ("[T]he

size of the class and geographic location of the would-be class members are relevant to any consideration of practicality."); *Checking Overdraft Litig.,* 2011 WL 3158998, at *2. The proposed class in this case well exceeds the minimum threshold recognized by the Eleventh Circuit. *See Cox,* 784 F.2d at 1553. The numerosity requirement is satisfied here.

### 2. Questions of Law and Fact Are Common to All Settlement Class Members.

Rule 23(a)(2) requires class action plaintiffs to identify questions of law or fact common to the proposed class. *See* Fed. R. Civ. P. 23(a)(2). "The threshold for commonality is not high." *Cheney,* 213 F.R.D. at 490. Commonality requires a showing that the class members' claims "depend on a common contention" and that the class members have "suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551 (2011). "[F]or purposes of Rule 23(a)(2), even a single [common] question will do[,]" *id.* at 2556 (brackets in original), and "where a common scheme of conduct has been alleged, the commonality requirement should be satisfied." *Checking Overdraft,* 2011 WL 3158998, at *4.

Plaintiffs' claims here depend on the common contention that Defendants conceived and implemented a scheme to manipulate and artificially inflate LPI premiums that they would then charge to the borrower. All members of the putative class were injured in the same manner: they were charged LPI premiums that included inflated costs, and have paid or now owe amounts in excess of what their mortgage agreements allowed. *See Williams,* 2012 WL 566067, at *5 (finding commonality where "all members of the propose class were injured in the same manner, namely by being charged inflated premiums for the FPI").

Thus, while only one question of law *or* fact is required, many common questions capable of class-wide resolution arise from Plaintiffs' claims, including whether Defendants included impermissible costs in FPI charges; whether Ocwen breached the implied covenant of

good faith and fair dealing by entering into an exclusive arrangement with Assurant to artificially inflate premiums; and whether Assurant was unjustly enriched as a result of its LPI policies and practices.  These issues satisfy commonality.  *See, e.g., id.* at *5 ("The determination of the truth or falsity of the Plaintiff's allegations that Wells Fargo and QBE engaged in a scheme to force-place insurance with inflated and excessive premiums will resolve an issue that is central to the validity of each one of the claims in one stroke.").

### 3.  Plaintiffs' Claims Are Typical of Those of the Settlement Class.

Rule 23(a)(3) requires Plaintiffs to demonstrate that their claims are typical of those held by the proposed class.  *See* Fed. R. Civ. P. 23(a)(3).  Typicality and commonality are related, with commonality referring to "the group characteristics of the class as a whole" and typicality focusing on the named plaintiff's claims in relation to the class.  *Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. at 686 n.23.  "Any atypicality or conflict between the named Plaintiff's claims and those of the class must be clear and must be such that the interests of the class are placed in significant jeopardy." *Cheney,* 213 F.R.D. at 491.

Plaintiffs' claims in this case arise from the same course of conduct and are based on the same legal theories as those brought on behalf of the proposed class.  Plaintiffs and every member of the proposed class took mortgage loans from Ocwen or its predecessors that were governed by common and materially uniform agreements.  As a result, once their voluntary policies lapsed, Plaintiffs and every other member of the proposed class were charged artificially inflated FPI premiums by Defendants.  Plaintiffs and the class seek redress through common claims for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, breach of fiduciary duty, and violations of FDUTPA and the federal RICO statute.

### 4. Plaintiffs and Their Counsel Are Adequate Representatives.

To satisfy Rule 23(a)(4), the representative parties must "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4).  This requirement is satisfied when the class representatives have (1) no interests antagonistic to the rest of the class and (2) counsel who are "qualified, experienced, and generally able to conduct the proposed litigation." *Cheney*, 213 F.R.D. at 495.  "Adequate representation is presumed in the absence of contrary evidence." *Association for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 464 (S.D. Fla. 2002).

### a. Plaintiffs Do Not Have Interests Antagonistic to Settlement Class Members.

Adequacy exists where a class representative shares common interests with the class and seeks the same type of relief for himself or herself as he or she does for other Settlement Class members.  *See Tefel v. Reno*, 972 F. Supp. 608, 617 (S.D. Fla. 1997); *Kreuzfeld A.G. v. Carnehammar*, 138 F.R.D. 594, 600 (S.D. Fla. 1991).  Here, the named Plaintiffs have no interest that is antagonistic to those held by the rest of the Settlement Class.  The class definition includes only individuals who were subjects of Defendants' FPI scheme.  (Ex. A ¶ 2.47).  All members of the class had LPI coverage placed on their homes and were charged inflated premiums that were added to the balance of their mortgage loans or taken from escrow.  (*Id.*)  Thus, the critical issues in this case—the existence, implementation, and unlawfulness of Defendants' FPI scheme—are common to Plaintiff's claims and the claims of the class.  Plaintiffs and the proposed class members share a common goal:  to recover excess charges that were added to their insurance premiums.  Plaintiffs have satisfied Rule 23(a)(4).  *See Williams*, 2012 WL 566067, at *6-7.

### b. Plaintiffs' Counsel Are Qualified and Experienced.

The attorneys who seek to represent the Settlement Class in this case are highly qualified to serve as class counsel, have been investigating FPI claims for more than three years, and have served as lead and co-lead counsel in some of the largest class actions in the country, as well as insurance-related complex cases. The three law firms that Plaintiffs seek to name as Class Counsel in this action are Kozyak Tropin & Throckmorton, LLC, Podhurst Orseck, P.A., and Harke Clasby & Bushman, LLP. These firms have successfully prosecuted consumer class actions and their law firms are well respected in the communities that they serve.

### B. The Settlement Class Meets the Requirements of Rule 23(b)(3).

In addition to meeting the four requirements of Rule 23(a), a plaintiff seeking class certification must satisfy one subsection of Rule 23(b). *Cheney*, 213 F.R.D. at 489. Plaintiff here seeks certification under Rule 23(b)(3), under which certification is appropriate if (1) common questions of law or fact predominate over those affecting only individual class members and (2) class treatment is superior to other adjudication methods. *See* Fed. R. Civ. P. 23(b)(3). The latter question implicates manageability concerns, which do not bear on certification of a settlement class. *See Checking Account Overdraft Litig.*, 275 F.R.D. at 659.

Here, "irrespective of the individual issues which may arise, the focus of the litigation concerns the alleged common course of unfair conduct embodied in [Defendants'] scheme to" manipulate FPI premiums charged to Plaintiff and the proposed class. *Checking Overdraft Litig.*, 2011 WL 3158998, at *7. Proof of this scheme may be substantiated by common evidence that would remain the same regardless of class size or composition. Common issues would predominate over any individual issue that might arise.

18

Moreover, a comprehensive resolution of the Settlement Class members' claims in this action would be far superior to litigating each of their claims separately. "Since the damage amounts allegedly owed to each individual [borrower] are relatively low—especially as compared to the costs of prosecuting the types of claims in this case involving complex, multi-level business transactions between sophisticated defendants—the economic reality is that many of the class members would never be able to prosecute their claims through individual lawsuits." *Williams*, 280 F.R.D. at 675. Accordingly, the Court should certify the proposed class.

## III.   THE COURT SHOULD APPROVE THE PROPOSED CLASS NOTICE.

Federal Rule of Civil Procedure 23(e)(1) provides that the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Class notice should be "reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The parties' proposed notice plan readily meets this standard. The Settlement Agreement provides that the Settlement Administrator shall distribute class notice by first-class mail in the form attached as Exhibit A to the Settlement Agreement to all identifiable class members no fewer than 90 days before the final approval hearing. (Ex. A ¶ 6.1). The Settlement also provides for internet notice and a toll-free number through which Settlement Class members can acquire information, and allows class members to submit claims online. (*Id.* ¶¶ 6.2, 6.3 & Exs.).

The notice itself also satisfies the requirements of the Federal Rules. It provides, among other things, a clear definition of the Class; a description of the underlying lawsuit and the material terms of the Settlement; instructions as to how Settlement Class members may make a claim and determine whether they are eligible to do so; an explanation of objection and opt-out

rights and a date by which Settlement Class members may opt out, and information regarding how to do so; instructions as to how to object to the Settlement and an objection deadline; the date on which the Court will hold a Final Approval Hearing; and the internet address and toll-free number from which class members may obtain additional information about the Settlement and its terms.  (*Id.* at Ex. A.)  The claim form and instructions also provide clear and comprehensive instructions as to who is eligible for relief and how to make a claim. (*Id.* at Ex. B.)

## IV.    THE COURT SHOULD APPOINT THE UNDERSIGNED FIRMS AS CLASS COUNSEL.

The parties have defined Class Counsel to include the three law firms of Kozyak Tropin & Throckmorton, LLC, Podhurst Orseck, P.A., and Harke Clasby & Bushman, LLP. (Ex. A ¶ 2.15).   Plaintiff and undersigned counsel now move the Court to appoint these three firms as Class Counsel for the Settlement Class, as it has done in five other FPI actions.  Undersigned counsel have significant experience litigating these cases, having represented plaintiffs in actions against fourteen major mortgage lenders, the Assurant Defendants, and QBE, the other major force-placed insurer that contracts with major lenders to issue force-placed coverage.

## V.  THE COURT SHOULD SCHEDULE A FINAL APPROVAL HEARING.

The second step of class action settlement approval is the Court's consideration of the settlement at a final approval hearing.  Plaintiffs request that the Court schedule the Final Approval Hearing at the Court's earliest convenience after May 22, 2015.  Should the Court grant this Motion, Plaintiffs will file their final approval motion on a date set by the Court, which shall be no earlier than ninety days after service of class notice, and Class Counsel will file their fee application at least ten days prior to any objection or opt-out deadline.

## <u>CONCLUSION</u>

The Court should enter an order granting preliminary approval of the settlement.

Respectfully submitted this 18th day of December, 2014.

By: /s/ Adam M. Moskowitz

| | |
|---|---|
| Adam M. Moskowitz, Esq.<br>Florida Bar No. 984280<br>amm@kttlaw.com<br>Thomas A. Tucker Ronzetti, Esq.<br>Florida Bar No. 965723<br>tr@kttlaw.com<br>Rachel Sullivan, Esq.<br>Florida Bar No. 815640<br>rs@kttlaw.com<br>Robert J. Neary, Esq.<br>Florida Bar No. 81712<br>rn@kttlaw.com<br>**KOZYAK TROPIN &<br>THROCKMORTON**<br>2525 Ponce de Leon Blvd., 9th Floor<br>Coral Gables, FL 33134<br>Telephone:  (305) 372-1800<br>Facsimile:   (305) 372-3508<br>*Counsel for Plaintiff* | Aaron S. Podhurst, Esq.<br>Florida Bar No. 63606<br>apodhurst@podhurst.com<br>Peter Prieto, Esq.<br>Florida Bar No. 501492<br>pprieto@podhurst.com<br>John Gravante, III, Esq.<br>Florida Bar No. 617113<br>jgravante@podhurst.com<br>Matthew Weinshall<br>Florida Bar No. 84783<br>mweinshall@podhurst.com<br>**PODHURST ORSECK, P.A.**<br>City National Bank Building<br>25 West Flagler Street, Suite 800<br>Miami, Florida 33130<br>Telephone: 305-358-2800<br>Facsimile: 305-358-2382<br>*Counsel for Plaintiff* |
| Lance A. Harke, Esq.<br>Florida Bar No. 863599<br>lharke@harkeclasby.com<br>Sarah Engel, Esq.<br>Florida Bar No. 991030<br>sengel@harkeclasby.com<br>Howard M. Bushman, Esq.<br>Florida Bar No. 0364230<br>hbushman@harkeclasby.com<br>**HARKE CLASBY & BUSHMAN LLP**<br>9699 NE Second Avenue<br>Miami Shores, Florida 33138<br>Telephone:     (305) 536-8220<br>Facsimile:     (305) 536-8229<br>*Counsel for Plaintiff* | |

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the foregoing was filed electronically via CM/ECF on

the 18th day of December, 2014 and served by the same means on all counsel of record.

By: <u>/s/ Adam M. Moskowitz</u>