UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 14-60649-GOODMAN
[CONSENT CASE]

JENNIFER LEE, *et al.*, on behalf of
themselves and all others similarly
situated,

        Plaintiffs,

v.

OCWEN LOAN SERVICING, LLC, *et al.*,

        Defendants.
_____/

**MARGO PERRYMAN'S SUR-REPLY IN RESPONSE TO CLASS COUNSEL'S
MOTION FOR AN ORDER TO SHOW CAUSE**

I.   **THE *GILLETTE* AND *ROTHSTEIN* OPINIONS DO NOT "DISPOSE" OF PERRYMAN'S OBJECTION**

Class Counsel first claim that the Eleventh Circuit's opinion in *Batman v. The Gillette Company,* No. 14-13882, 2015 WL 4310896 (11th Cir., July 16, 2015) disposes of Perryman's objection, because the Court found that the district court acted within its discretion in approving a claims-made settlement there.  The settlement in *Gillette* bears no resemblance to the one in this case.  The claims-made settlement in *Gillette* was fair because it was *necessary*.  As found by the district court, "Gillette lacked any class-member contact information," and "has no records from which to identify actual purchasers of Ultra batteries." *Id.* at * 5.  The objector in *Gillette* also "did not contest [these] facts or the evidence introduced to support [them]." *Id.* Additionally, Gillette was required to donate $6 million worth of batteries to charity over five years – independent of the monetary relief made available to the class – offsetting the low claims rate. *Id.*  The settlement here does not include a cy pres or charity component.  Instead, the defendants will wipe out a $140 million liability for four cents on the dollar.[1]

In finding that the claims-made structure of the settlement in *Gillette* was "not inherently suspect" because it was *necessary*, the Eleventh Circuit relied on the *same authority* as Perryman.  *Gillette,* 2015 WL 4310896 * 4 (citing 4 WILLIAM B. RUBENSTEIN, *Newberg on Class Actions* § 12:18 (5th ed. 2011)); D.E. 146 at pp. 7 – 8 (Perryman objection).  The claims-made structure in *Gillette* was "inevitable" because it involved a case where "defective consumer

---

[1] Class Counsel argue there is "no evidence of collusion" among the settling parties, and "no basis to infer that the claims-made structure was intended to benefit Defendants or counsel." D.E. 178 at 4.  To the contrary, this settlement exhibits classic "hot button indicators" of unfairness, including:  (1) reversion of unclaimed funds to defendants, coupled with a "clear sailing" agreement; (2) An imbalance between the cash value of the settlement to the class as a whole and the agreed amount of attorney fees, where the attorneys "receive the lion's share of the cash and the class receive primarily nonmonetary relief;" and (3) settlements between class counsel and the same defendant in unrelated cases [suggesting] a continuing collusive relationship.  Federal Judicial Center, *Managing Class Action Litigation: A Pocket Guide for Judges* (3d Ed. 2010).

1

products [are] sold over the counter," and the defendant did not have "any record of who the purchasers of the product are, much less a current address for distribution of the recovery." *Id.; Newberg, supra,* § 12:18. Citing the Federal Judicial Center, *Newberg* also advises judges overseeing class suits to "[f]irst, consider whether a claims process is necessary at all," noting that the "defendant may already have the data it needs to automatically pay the claims of *at least a portion of class members* who do not opt out." *Id.; compare* D.E. 146 at pp. 7 – 8 (Perryman objection). The *Gillette* opinion supports Perryman's objection – not this settlement.

Class Counsel also claim that *Rothstein v. Balboa Insurance Company,* No. 14-2250-cv, 2015 WL 4460713 (2d Cir., July 22, 2015), which found that the filed-rate doctrine barred the LPI claims in that case, "speaks to the hurdles that plaintiffs would have faced had litigation continued[.]" D.E. No. 178 at 3, fn. 5. True, the plaintiffs in *this case* did face these hurdles, because they settled the case prior to obtaining rulings on their motions to dismiss. But Perryman's counsel had already overcome these challenges, as the *Perryman* court found that the filed-rate doctrine does not bar the LPI claims against Ocwen and ASIC – and is in the majority of opinions to so hold. *Perryman v. Litton Loan Servicing, LP, et al.,* No. 14-cv-02261-JST, 2014 WL 4954674 (N.D. Cal., Oct. 1, 2014). Thus, the defendants here did not face weak or uncertain claims, justifying this settlement which provides negligible relief to the class.[2]

### III.   THE DATA EXISTS TO PAY CLASS MEMBERS DIRECTLY

Based on Mr. Jastrzemski's testimony, Class Counsel admit that "Ocwen can [systematically] identify mortgage loans that have undergone modification, or those paid through Government programs like the Hardest Hit Fund," as well as "borrowers whose loans were

---

[2] Notably, a "hot button indicator" of unfairness includes a situation where, like here, the defendant "selected counsel confronted with [the] most precarious position … and then proceeded to offer and convince Class Counsel to accept highly undesirable terms to settle the case." *Managing Class Action Litigation, supra,* at p. 21 (quoting *Figueroa v. Sharper Image Corp.,* 517 F.Supp. 2d 1292, 1321 (S.D. Fla. 2007)).

2

modified or those whose loans were liquidated as part of a short sale or deed-in-lieu of foreclosure transaction." Class Counsel's Reply, at 9 (citing Jastrzemski deposition). At a minimum, the Settlement Class members who do *not* fall into one of these categories "should be paid directly without requiring claims forms." Federal Judicial Center, Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide, at 6 (2010).

Aside from a recitation of general accounting principles – that "payments into escrow are not attributed to specific escrow charges" (Defendants' Reply, at 3) – Defendants do not identify *any* data they do not possess that would prevent them from making the necessary calculations. As Ms. Walzak further explains in her accompanying declaration:

> The fact is that every servicer has the necessary data to conduct the calculation of payments for taxes and insurance as acknowledged by Mr. Jastrzemski. This data would include such items as the amount of government assistance or lender paid amounts as well as funds contributed by the servicer. While all this information is not necessarily contained in the escrow section of the system, it is retained within the comprehensive system. The calculation then become a matter of simple math. By downloading the data into a program to perform the calculations the amount paid by the borrowers for LPI would be determined. The end result would be the information necessary.

Sur-Reply Declaration of Rebecca B. Walzak ¶ 3.

### III. PERRYMAN'S OBJECTION IS ENTIRELY PROPER

Seeking to distract the Court's attention from the lopsided benefits the proposed settlement provides to Class Counsel instead of to the Settlement Class, Class Counsel argue that "[t]he real question for the Court is why relief to almost 400,000 homeowners across the country being delayed?" Class Counsel's Reply, at 5. The reason is that approximately 385,000 of them will receive no relief whatsoever, given the paltry – *and predicted* – 4% claims rate. None of the pejoratives hurled at Perryman's counsel change this basic fact, which Class Counsel are unable to defend on the merits.

Ocwen argues that Ms. Walzak "has offered similar opinions in at least two other cases, both in this district (*Fladell* and *Diaz*)," which were approved "notwithstanding Ms. Walzak's opinions." Defendants' Reply, at 5. The reason is that just before the hearing on final approval in both of those cases, Class Counsel agreed to pay the objectors who submitted her opinions to withdraw their objections, as Class Counsel have freely admitted in subsequent proceedings before Judge Moreno. *See* Order, at 1 (granting motion to discover "the amount of fees Class Counsel promised to pay objectors for withdrawing their objections to the settlement") (attached hereto as Exhibit A).

Class Counsel point out that Perryman's counsel are seeking fees in *Fladell* based on their work in parallel litigation against Wells Fargo in California. Perryman's counsel were in no position to object to the *Fladell* settlement, regardless of its merit, as their co-counsel in the California litigation (the Owings, Wagoner, and Walker law firms) also served as co-counsel in *Fladell* and *Hall*, in which Class Counsel had been granted the exclusive authority to negotiate the settlements, and who did so without those firms' participation.[3]

Finally, Class Counsel attack Ms. Kelly's performance[4] in *Lane v. Wells Fargo Bank, N.A.* (N.D. Cal.). As set forth in the opinion cited, the Court "reserved judgment" as to whether it would appoint Ms. Kelly as class counsel in that case, and placed her on the Court's list of "finalists," along with Mr. Himmelstein, who had *no prior involvement in that litigation*. *See*

---

[3] *See* Order Granting Motion to Appoint Interim Class Counsel, *Fladell v. Wells Fargo Bank, N.A.*, No. 13-cv-60721 (Oct. 15, 2013) (D.E. 77), at 1-2 (providing that "Interim Class Counsel shall have exclusive authority over the following matters on behalf of Plaintiffs and the putative class in this action," including "conducting settlement negotiations"); *Hall v. Bank of America, N.A.*, No. 12-cv-22700 (Dec. 2, 2013) (D.E. 293), at 1-2 (same).

[4] Class Counsel speculate that Himmelstein is "taking the lead" in this objection. Class Counsel's Reply, at 1 n.2. The briefing on this objection was handled primarily by Ms. Kelly, until she gave birth on August 10, 2015.

4

Declaration of Sheri L. Kelly in Support of Response to Class Counsel's Motion for an Order to

Show Cause (D.E. 173-3) ¶¶ 5-7 & Exh. A.[5]


Dated:  August 14, 2015                                  Respectfully submitted,

/s/ *Alexander P. Owings*_____
Alexander P. Owings
Florida Bar No. 0093797
apowingsattorney@gmail.com
A.P. Owings, Attorney at Law, P.A.
212 Center Street, Suite 303
Little Rock, Arkansas 72201
Telephone: (501) 313-5380

Barry Himmelstein
E-mail: barry@himmellaw.com
HIMMELSTEIN LAW NETWORK
2000 Powell St., Ste. 1605
Emeryville, CA 94608
Telephone: (510) 450-0782
Facsimile: (510) 924-0403

Sheri L. Kelly
E-mail: slk@sherikellylaw.com
LAW OFFICE OF SHERI L. KELLY
31 E. Julian St.
San Jose, CA 95112
Telephone: (408) 287-7712
Facsimile: (408) 583-4249

---

[5] As further set forth in Ms. Kelly's declaration, in the prior case noted in the Court's opinion, *Hofstetter v Chase Home Finance, LLC*, Ms. Kelly's role as local counsel was solely to facilitate filings by out-of-state counsel.  D.E. 173-3 ¶ 8.

5

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed on August 14, 2015 with the Clerk by using the CM/ECF system, which will sent notification of such filing to all attorneys of record.

Dated:  August 14, 2015               Respectfully submitted,


                                     */s/ Alexander P. Owings*_____
                                     Alexander P. Owings
                                     Florida Bar No. 0093797
                                     apowingsattorney@gmail.com
                                     A.P. Owings, Attorney at Law, P.A.
                                     212 Center Street, Suite 303
                                     Little Rock, Arkansas 72201
                                     Telephone: (501) 313-5380

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 13-60721-CIV-MORENO/HUNT

IRA MARC FLADELL, et. al.,

    Plaintiffs,

vs.

WELLS FARGO BANK, N.A., et. al.

    Defendants.

_____/

**ORDER**

    This matter is before this Court on Additional *Fladell* Counsel's Motion for Discovery of Fee Agreements with Objectors filed on December 15, 2014, ECF No. 294. On December 19, 2014, the Honorable Federico A. Moreno referred this motion to the undersigned United States Magistrate Judge for disposition.[1] ECF No. 299; see 28 U.S.C.A. § 636(b); see also S.D. Fla. L.R., Mag. R. 1. Having carefully and thoroughly reviewed the Motion, the Response and Reply thereto, the court file, the applicable law, and being otherwise fully advised in the premises, it is hereby ORDERED and ADJUDGED that the Motion is GRANTED for reasons more fully explained below.

    Additional *Fladell* Counsel seek information regarding the amount of fees Class Counsel promised to pay objectors for withdrawing their objections to the settlement of the underlying action. Additional *Fladell* Counsel argue that any agreement to pay

---

[1] On December 22, 2014, this matter was reassigned to the undersigned Magistrate Judge. ECF No. 303.

objectors' fees in exchange for withdrawing their objections reduces the overall fee available to attorneys who contributed to the creation of the common fund.  Class Counsel respond by simply indicating that the information is not relevant and, as such, have not disclosed to this Court or to Additional *Fladell* Counsel any fee-sharing agreements they may have entered into, arguing that it is an irrelevant private contractual matter.  There is no dispute that "an allocation of fees should be based on the relative contributions that each law firm provided to the Class." Allapattah Services, Inc. v. Exxon Corp., 454 F. Supp. 2d 1185, 1226-1227 (S.D. Fla. 2006).  "A federal court always has the authority to reject agreements allocating fees among class counsel when there is cause to do so."  Id. at 1225.  Moreover, the 63 page well-reasoned opinion presented by Judge Gold of this District makes clear that private fee sharing agreements overlook the district court's role as protector of the class interests and of assuring reasonableness in the awarding of fees.  Id. at 1226.  The Allappattah opinion cites to other sister Circuits that have also rejected private and undisclosed agreements to divide attorneys' fees in a class action.  This Court declined to enforce the private agreement between counsel and instead allocated fees on the relative contributions of the law firms.  Id. at 1227.  The undersigned therefore finds the information relevant and shall order any and all agreements with the Kessler Topaz firm and all other objectors to allocate fees awarded to be produced within seven (7) days of the date of this Order.

The undersigned makes no finding as to the merits of the underlying Additional *Fladell* Counsel's Motion for Attorneys' Fees, ECF No. 183, even though the parties commingle their substantive arguments within this Motion for Discovery.  Additional

*Fladell* Counsel request that additional briefing should be allowed upon receipt of the discovery. The undersigned denies the request for further briefing at this time.

Instead, this Court further ORDERS Class Counsel and Additional *Fladell* Counsel to schedule a formal mediation conference, after receipt of the discovery ordered above, in an effort to resolve the fee dispute at issue. The mediation shall occur within twenty (20) days from the date of the receipt of the discovery. Counsel shall file with this Court a Notice of Selection of Mediator indicating the name of the mediator and the date of mediation.

DONE and ORDERED at Fort Lauderdale, Florida this 2nd day of February 2014.

_____
PATRICK M. HUNT
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

All Counsel of Record

Honorable Federico A. Moreno

3